## SHURTLEFF *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 76. Argued January 20, 1903.—Decided April 6, 1903.

Where Congress creates an office and provides for the removal of the incumbent at any time for inefficiency, neglect of duty, or malfeasance in office, if the removal of the officer is sought to be made for any of those causes he is entitled to notice and a hearing; but if the President removes him without giving him notice and an opportunity to defend himself, it must be presumed that the removal was not made for any of the causes assigned in the statute.

In the absence of constitutional or statutory provision the President can, by virtue of his general power of appointment, remove an officer, even though he were appointed by and with the advice and consent of the Senate. This power (assuming, but not deciding, that Congress could deprive the President of the right to exercise it in such a case as this) cannot be taken away by mere inference or implication, and in the absence of plain language in the statute Congress will not be presumed to have taken it away.

Under section 12 of the Customs Administrative Act of June 10, 1890, providing for the appointment of general appraisers and their removal by the President for inefficiency, neglect or malfeasance in office, the President may also remove such officers without any of the causes specified, under his general power of removal.

THE appellant seeks to review a judgment of the Court of Claims denying his right to be paid the salary pertaining to

the office of a general appraiser of merchandise and accruing between May 15 and November 1, 1899. The court refused to decree payment of the claim on the ground that he was not one of the appraisers during the time for which he demanded such salary.

The facts, as they appear in the findings of the Court of Claims, are that the appellant was nominated on July 17, 1890, to be one of the general appraisers of merchandise under the act of June 10, 1890, chapter 407, 26 Stat. 131, and that nomination was consented to on the following day by the Senate, and the appellant was thereupon commissioned to be such general appraiser of merchandise. He accepted that office and took the oath required on July 24, 1890, and remained in such office and was paid the salary attached thereto up to May 15, 1899. On May 3 of that year he received the following communication from the President:

"EXECUTIVE MANSION,
"WASHINGTON, D. C., *May* 3, 1899.
"SIR: You are hereby removed from the office of general appraiser of merchandise, to take effect upon the appointment and qualification of your successor.
"WILLIAM McKINLEY."

The appellant never resigned his office nor acquiesced in any attempted removal therefrom, and he was never notified or informed of any charges made against him, either of inefficiency, neglect of duty or malfeasance in office, and he knows of no cause for his removal from the office having been ascertained or assigned by the President.

Since May 15, 1899, he has been ready and willing and offered to discharge the duties of the office, and has not been paid any salary since that date. He has made monthly demand upon the Treasury Department for the salary attaching to the office from May 15 to November 1, and such demand has been refused.

On May 12, 1899, an appointment was made during the recess of the Senate to fill the vacancy caused by the removal of the petitioner from his office, and such appointment was to be

in effect not longer than to the end of the next session of the Senate of the United States.   The appointee under that commission took the oath of office and entered upon the duties thereof on May 12, 1899, and has received pay as such officer beginning on May 19, 1899, up to the present time.   On December 15, 1899, he was nominated to the Senate and the nomination to that office was confirmed on January 17, 1900, and he was commissioned by the President under the above confirmation on January 22, 1900, and took the oath of office under that appointment on January 26, 1900, and since that time has remained in the office to which he was so appointed.

Upon these findings the Court of Claims decided as a conclusion of law that the appellant was not entitled to recover, and his petition was therefore dismissed.   36 C. Cl. 34.

*Mr. Edwin B. Smith* for appellant.

*Mr. Assistant Attorney General Pradt* for appellee.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

The office of general appraiser of merchandise was created by the twelfth section of the act of Congress approved June 10, 1890, commonly called the Customs Administrative Act.   26 Stat. 131, 136.   The material portion of that section reads as follows:

"Sec. 12. That there shall be appointed by the President, by and with the advice and consent of the Senate, nine general appraisers of merchandise, each of whom shall receive a salary of seven thousand dollars a year.   Not more than five of such general appraisers shall be appointed from the same political party.   They shall not be engaged in any other business, avocation, or employment, and may be removed from office at any time by the President for inefficiency, neglect of duty, or malfeasance in office. . . ."

There is, of course, no doubt of the power of Congress to create such an office as is provided for in the above section.   Under

the provision that the officer might be removed from office at any time for inefficiency, neglect of duty, or malfeasance in office, we are of opinion that if the removal is sought to be made for those causes, or either of them, the officer is entitled to notice and a hearing. *Reagan* v. *United States,* 182 U. S. 419, 425. In speaking of causes of removal, Mr. Chief Justice Fuller said in that case:

" The inquiry is therefore whether there were any causes of removal prescribed by law, March 1, 1895, or at the time of the removal. If there were, then the rule would apply that where causes of removal are specified by Constitution or statute, as also where the term of office is for a fixed period, notice and hearing are essential. If there were not, the appointing power could remove at pleasure or for such cause as it deemed sufficient."

Various state courts have also held that where an officer may be removed for certain causes, he is entitled to notice and a hearing. See *Dullam* v. *Willson,* 53 Michigan, 392, 401; *Page* v. *Hardin,* 8 B. Mon. 648, 672; *Willard's App.,* 4 R. I. 597; *Commonwealth* v. *Slifer,* 25 Pa. St. 23, 28; *State* v. *Hawkins,* 44 Ohio St. 98, 114; *Biggs* v. *McBride,* 17 Oregon, 640, 650; *Ham* v. *Boston,* 142 Massachusetts, 90.

It must be presumed that the President did not make the removal for any cause assigned in the statute, because there was given to the officer no notice or opportunity to defend. The question then arises, can the President exercise the power of removal for any other causes than those mentioned in the statute; in other words, is he restricted to a removal for those causes alone or can he exercise his general power of removal without such restriction?

We assume, for the purposes of this case only, that Congress could attach such conditions to the removal of an officer appointed under this statute as to it might seem proper, and, therefore, that it could provide that the officer should only be removed for the causes stated and for no other, and after notice and an opportunity for a hearing. Has Congress by the twelfth section of the above act so provided?

It cannot now be doubted that in the absence of constitu-

tional or statutory provision the President can by virtue of his general power of appointment remove an officer, even though appointed by and with the advice and consent of the Senate. *Ex parte Hennen*, 13 Pet. 230; *Parsons* v. *United States*, 167 U. S. 324, and cases cited. To take away this power of removal in relation to an inferior office created by statute, although that statute provided for an appointment thereto by the President and confirmation by the Senate, would require very clear and explicit language. It should not be held to be taken away by mere inference or implication. Congress has regarded the office as of sufficient importance to make it proper to fill it by an appointment to be made by the President and confirmed by the Senate. It has thereby classed it as appropriately coming under the direct supervision of the President and to be administered by officers appointed by him, (and confirmed by the Senate,) with reference to his constitutional responsibility to see that the laws are faithfully executed. Article II, sec. 3.

In *Blake* v. *United States*, 103 U. S. 227, there were two constructions that might have been placed upon the act there under consideration, determining the tenure by which army and naval officers held their commissions in time of peace, and that construction was placed upon the fifth section of the act of July 13, 1866, chapter 176, 14 Stat. 92, which left with the President his power to remove an officer of the Army or Navy, by the appointment of his successor, by and with the advice and consent of the Senate. Although the question was regarded as not free from difficulty, it was held that there was no intention on the part of Congress to deny or restrict the power of the President with the consent of the Senate to displace army and naval officers in time of peace by the appointment of others in their places. This indicates the tendency of the court to require explicit language to that effect, before holding the power of the President to have been taken away by an act of Congress.

The appellant contends that because the statute specified certain causes for which the officer might be removed, it thereby impliedly excluded and denied the right to remove for any

other cause, and that the President was therefore by the stat-
ute prohibited from any removal excepting for the causes, or
some of them therein defined.    The maxim, *expressio unius est
exclusio alterius,* is used as an illustration of the principle upon
which the contention is founded.    We are of opinion that as
thus used the maxim does not justify the contention of the ap-
pellant.    We regard it as inapplicable to the facts herein.    The
right of removal would exist if the statute had not contained a
word upon the subject.    It does not exist by virtue of the
grant, but it inheres in the right to appoint, unless limited by
Constitution or statute.    It requires plain language to take it
away.    Did Congress by the use of language providing for re-
moval for certain causes thereby provide that the right could
only be exercised in the specified causes?    If so, see what a dif-
ference in the tenure of office is effected as to this office, from
that existing generally in this country.    The tenure of the ju-
dicial officers of the United States is provided for by the Con-
stitution, but with that exception no civil officer has ever held
office by a life tenure since the foundation of the government.
Even judges of the territorial courts may be removed by the
President.    *McAllister* v. *United States,* 141 U. S. 174.    To
construe the statute as contended for by appellant is to give
an appraiser of merchandise the right to hold that office
during his life or until he shall be found guilty of some act
specified in the statute.    If this be true, a complete revolution
in the general tenure of office is effected, by implication, with
regard to this particular office.    We think it quite inadmis-
sible to attribute an intention on the part of Congress to make
such an extraordinary change in the usual rule governing the
tenure of office, and one which is to be applied to this particular
office only, without stating such intention in plain and explicit
language, instead of leaving it to be implied from doubtful infer-
ences.    The rule which is expressed in the maxim is a very
proper one and founded upon justifiable reasoning in many in-
stances, but should not be accorded controlling weight when to
do so would involve the alteration of the universal practice of
the government for over a century and the consequent curtail-
ment of the powers of the executive in such an unusual manner.

We can see no reason for such action by Congress with reference to this office or the duties connected with it.

The appellant has cited some cases in the state courts, where, under the peculiar circumstances therein set forth, and with regard to the particular provisions of the statutes, it has been held that the power to remove is restricted to the causes stated in such statutes. We do not regard them as applicable to a case like this.

In making removals from office it must be assumed that the President acts with reference to his constitutional duty to take care that the laws are faithfully executed, and we think it would be a mistaken view to hold that the mere specification in the statute of some causes for removal thereby excluded the right of the President to remove for any other reason which he, acting with a due sense of his official responsibility, should think sufficient.

By the fourth section of article II of the Constitution it is provided that all civil officers shall be removed from office on impeachment for and conviction of treason, bribery, or other high crimes and misdemeanors. No one has ever supposed that the effect of this section was to prevent their removal for other causes deemed sufficient by the President. No such inference could be reasonably drawn from such language.

We are not unmindful of the force of the contention that, if the power of removal is not limited to the causes specified in the statute, that then those words providing for a removal for inefficiency, neglect of duty or malfeasance in office, fulfill no function, because without them the President has unlimited power of removal, and with them he still has the same power.

It may be said, however, that there is some use for the provision for removal for the causes named in the statute. A removal for any of those causes can only be made after notice and an opportunity to defend, and therefore, if a removal is made without such notice, there is a conclusive presumption that the officer was not removed for any of those causes, and his removal cannot be regarded as the least imputation on his character for integrity or capacity. Other causes for removal may, however, exist, and be demanded by the interests of the

service, in order that the office may be better conducted, although the officer may not be proved guilty of conduct coming within the statute as a cause for removal. It is true that, under this construction, it is possible that officers may be removed for causes unconnected with the proper administration of the office. That is the case with most of the other officers in the government. The only restraint in cases such as this must consist in the responsibility of the President under his oath of office, to so act as shall be for the general benefit and welfare.

It may be, perhaps, that the suggestion above indicated, of the purpose of the statute as evidenced by this language is not entirely satisfactory as a reason for its employment. We by no means overlook the objections to it. But we are called upon to place a meaning upon language which, as used in this section of the statute, gives rise to doubts as to what its true meaning is. We are asked not alone to interpret the language actually used, but to infer or imply therefrom a further meaning as to its effect, which does not necessarily flow from the language itself, and, if adopted, results in the creation of a tenure of this particular office, not attached to a single other civil office in the government, with the exception of judges of the courts of the United States. We cannot bring ourselves to the belief that Congress ever intended this result while omitting to use language which would put that intention beyond doubt. But we are not shut up to the necessity of finding some other and more plausible reason for the use of this language or else to adopt the meaning contended for by the appellant. The right of removal, as we have already remarked, would exist as inherent in the power of appointment unless taken away in plain and unambiguous language. This has not been done, and although language has been used from which we might speculate or guess that possibly Congress did intend the meaning contended for by appellant, yet it has not in fact expressed that meaning in words plain enough to call upon the courts to determine that such intention existed.

The claim made by the appellant, it will be seen, is for salary accruing prior to the appointment and confirmation of his successor by the President and Senate, but holding, as we do, that

the President had the power to remove on other grounds than those mentioned in the act, he exercised that power by appointing the appellant's successor for the time which elapsed between such appointment and his reappointment after the meeting of the Senate and his confirmation by that body.

We are of opinion that the judgment of the Court of Claims should be

*Affirmed,*