J. Valldejuli Rodríguez, Petitioner and Appellee, *v.* Carlos M. de Castro, City Manager of San Juan, Respondent and Appellant.

No. 7544.—Argued July 12, 1937.—Decided November 17, 1937.

*Harry F. Besosa* for appellant. *J. Valldejuly Rodríguez pro se.*

MR. JUSTICE WOLF delivered the opinion of the court.

On the 27th of March, the City Manager of San Juan, Carlos M. de Castro, wrote a letter to Juan Valldejuli Rodríguez informing him that on the 30th of that month he would be removed from his position as attorney for the City Manager. Subsequently, again by letter, on the 31st of March Mr. de Castro retracted his first letter and informed Mr. Valldejuli that he was removed from his position because:

1. According to Section 39 of Act 99 approved May 15, 1931, upon the termination of the tenure of office of the City Manager who had appointed him, Mr. Valldejuli became automatically removed.

2. And, also, because in accordance with said section he thereby preferred charges as follows:

A. Lack of cordiality and confidence.

B. Lack of respect, and injury to the character of the City Manager by Mr. Valldejuli.

Later, on the 2nd of April, the City Manager added another charge, as follows:

Inexcusable negligence in carrying on the duties as attorney for the City Manager.

Mr. Valldejuli did not answer the charges and on the 5th of April a hearing was held at which evidence was presented by both sides. Mr. de Castro, on the 8th of April, in a resolution based on the evidence heard at said hearing, removed Mr. Valldejuli from his position. On the 18th of May Mr. Valldejuli filed a petition in certiorari in the District Court of San Juan to review the proceedings had in regard to his removal. Mr. de Castro made due return to

the writ and the District Court found for Mr. Valldejuli, with costs but not attorney's fees. The grounds of the decision were that the evidence in regard to Mr. Valldejuli's negligence in the carrying out of his duties was not sufficient to warrant the removal and, in regard to the other charges, that there were no legal grounds for the removal.

■ Appellant assigns twelve errors which he condenses into eight questions of law. The first so-called 'question of law has to do with the findings of fact of the district court. The district court in its findings of fact says as follows:

"The first charge is one of a legal nature and we do not see how a person can be charged with the fact that he was removed from his position by action of the law. The fact is that the defendant does not rely on this principle of law to remove petitioner from his position, but rather he presents it in the form of a charge and he does not base his action on the fact that the petitioner has ceased in his position since the official who named him has ceased as such, but bases it on the negligence of the petitioner in the carrying out of his duties. The defendant has chosen this procedure and we, to decide the charges and consider the whole proceeding, cannot step out of the field where he has placed himself."

Referring to Mr. de Castro's letter we find that it reads as follows:

"Sir:—

"Referring to the letter which I sent to you on the 27th of this month, in which I notified you that you would cease in your position as lawyer and notary of the Capital on March 30, 1937, I am compeled, against my will, to retract said letter, as it does not express all the reasons for which I acted in this manner, and in its place I hereby notify you that you are now suspended from your employment and salary for the following reasons:

"1. Because according to Act No. 99, approved May 15, 1931, section 39, having Mr. Jesús Benítez Castaño, who was the person who appointed you, ceased to be City Manager of the Capital on the 19th of March, 1937, you automatically ceased as an employee of the Capital on that same date.

"2. Because, further, in accordance with said Act and section, I hereby present the following charges:

"A. Lack of confidence and cordially which should exist between the City Manager of the Capital and his lawyer, as well as between employer and employee.

"B. For lack of respect or insult from you to the City Manager of the Capital.

"Charges A and B are ratified by the statements which you gave to the press and which were published in 'El Mundo,' in the editions of the 29th and 31st of the current month.

"For the aforesaid reasons, you are from this date suspended from employment and salary, and a hearing is set for the 5th of April, 1937, at 2 p. m., in the office of the City Manager of the Capital, that you may be heard and have an opportunity to defend yourself.

Yours truly,

(Sgd.) Dr. Carlos M. de Castro
City Manager of the Capital."

The district court was in error when it stated that the first charge preferred by Mr. de Castro was the fact that Mr. Valldejuli was removed from his position by action of the law. From Mr. de Castro's letter it appears clearly that he removed Mr. Valldejuli for two *motives* and in so doing used the alternative form. (1) Either you are removed by action of the law, or (2) I hereby prefer the following charges:

A. . . . . . . . . . .

B. . . . . . . . . . .

It seems clear that far from *waiving* the fact that Mr. Valldejuli was removed by action of law Mr. de Castro was on the contrary trying to make assurance doubly sure. This becomes clear if we refer to Mr. de Castro's letter. In his letter Mr. de Castro says "you are hereby removed."

Examining Act No. 99 of 1931 (Laws pp. 626, 642) we hold that the only Section that refers to, or may be considered as creating the position of attorney is Section 30, which reads as follows:

"Section 30. The City Manager, in his corporate and official capacity, shall represent the Capital all official, judicial or extra-judicial

actions brought by or against the Capital, and in such capacity he may appear and maintain all kinds of rights, actions and proceedings before any court of justice, organism or officer. In no proceeding or action where the Capital, represented by the City Manager, is a party, may the City Manager acquiesce in the complaint or fail to answer the same, or submit such action or proceeding to arbitration, without the previous consent of the Board of Commissioners.''

It is apparent that this Section vests in the City Manager the duty to represent the city in legal transactions of any sort and whether or not he is represented by attorney is left entirely up to him, the Section specifically saying: '' and in such capacity he may appear and maintain all kinds of rights, actions and proceedings before any court of justice, organism or officer.'' So that, if the City Manager, for the best interests of the city, appoints an attorney to carry out these acts, the attorney will then be acting for the City Manager, since by the act the latter is the one responsible for the carrying on of the duties of his office. In view of this it would seem that appellant's contention that Mr. Valldejuli should be considered out when Mr. Benítez resigned, by operation of law, is sound, or at least that the new manager could dispense with the services of the said official, if official he is. If the attorney derives his employment from the City Manager and carries out duties incumbent upon and for which the City Manager is responsible, there can be no question but that upon the termination of the tenure of office by the City Manager, the attorney either automatically ceases as such or the Manager may put an end to his services. This would dispose of the case.

The second question of law assigned by the appellant seems, however, as presented by the parties, to be the most important. Appellant alleges error in the district court in holding that the writ of certiorari was the proper procedure in cases of removal of employees. In order to prove his contention appellant first shows us the striking similarity between Section 46 of Act 99 of 1931 (Laws pp. 626, 652) and

Section 65 of Act 11 of 1924 (Special Session Laws p. 76). Section 46 of Act 99 of 1931 reads as follows:

"Section 46. On motion of the aggrieved party, the District Court of San Juan shall have jurisdiction:

"(a). To annul or to review by writ of certiorari any legislative or administrative act of the Board of Commissioners, of the Administrative Board, or of any official of the Capital, which infringes the constitutional rights of the complainants, or which is contrary to the Organic Act or to the laws of Puerto Rico;

"(b) To stay by injunction the execution of any ordinance, act, resolution or order of the Board of Commissioners, of the Administrative Board, or of any official of the Capital, which infringes rights guaranteed by the Organic Act or by Insular laws;

"(c) To compel by writ of mandamus the performance of ministerial duties by the officials of the Capital;

"(d) To grant, upon an ordinary action, compensation for damages to parties injured by acts or omissions of the officials of the Capital, due to malice, negligence or inexcusable ignorance."

The only differences between this and Section 65 of Act No. 11 of 1924 are those which can be ascribed to the ultimate aims of the acts themselves. Act No. 11 of 1924 is a law creating the form of the municipal governments and therefore speaks of "the mayor", "the municipal assembly," "the district courts" and "any other municipal officer." Act No. 99 of 1931, being a law to create a special form of government for the City of San Juan therefore speaks of "the administrative board," "the board of commissioners," "the District Court of San Juan," and "any official of the Capital."

In view of this we are of the opinion that the decisions in regard to the Act of 1924 are applicable to the Act of 1931.

If we accept this premise we encounter several decisions referring to Act 11 of 1924 which hold that certiorari is not the proper procedure to look into and weigh the evidence of a public hearing held for the removal of an officer.

In *Coll* v. *Todd*, 35 P.R.R. 572, this Court held as follows:

"We are somewhat inclined to agree with the appellee that the certiorari under the municipal law is not the mode of revising the act of the mayor in removing a municipal officer."

"Supposing, however, that certiorari is the proper remedy, what is the duty of a court? At the utmost to examine the return to see whether there is any justification for the action of the removing officer. Normally the said removing officer is the sole judge of the evidence and the function of the court is to see whether there is a total lack of proof to justify the removal or something similar. *Castro* v. *Quiñones*, 34 P.R.R. 780, 5 R.C.L. 263, 264."

In *Rivera* v. *Municipal Assembly*, 39 P.R.R. 71, this court says:

"The same juridical situation found in the Coll Case, supra, exists in the present case. We might stop here and reverse the judgment appealed from. However, as was done in that case, we shall proceed further in its consideration."

Later, in its holding, this court says:

"Both because certiorari was not the proper remedy and because a real case was not presented to the court, the judgment appealed from is reversed. . ."

In *Fernández Vanga* v. *Pavía, Mayor*, 42 P.R.R. 740, this court held as follows:

"We have gone into the merits of the case such as they appear from the record, but even that was unnecessary since, as stated by us in Coll v. Todd, 35 P.R.R. 572, and again in Rivera v. Municipal Assembly, 39 P.R.R. 71, the removal of an officer, even without just cause, does not come within the provisions of the Municipal Law authorizing the use of the writ of certiorari."

■■ The third question of law presented by the appellant so far as it is necessary to examine it is whether the district court went beyond its jurisdiction when it analyzed the *sufficiency* of the evidence and reviewed the resolution of Mr. de Castro. This we believe can be answered by again referring to *Coll* v. *Todd, supra*, where this court says in effect:

"Supposing, however, that certiorari is the proper remedy, what is the duty of a court? At the utmost to examine the return to see

wheher there is any justification for the action of the removing officer. Normally the said removing officer is the sole judge of the evidence and the function of the court is to see whether there is a total lack of proof to justify the removal or something similar."

The appellant points out, and we agree, that in the absence of some statutory limitation, the power of removal is an incident of the power to appoint. *Ex Parte Hennen*, 13 Peters, 230; *Shurtleff* v. *United States*, 189 U. S. 311; *Burnap* v. *United States*, 252 U. S. 515, and cases cited: *Clayton* v. *Utah Territory*, 132 U. S. 632; Dillon on Municipal Corporations, pars. 462, 473; 22 R.C.L. 562; 46 C. J. 985.

As we have pointed out, there is nothing in the law regulating the appointment of an attorney nor is he made an officer or employee under any of the Puerto Rican acts. Hence, as the power to remove may be considered absolute, the hearing that took place need not be considered. The proper theory, as we have pointed out, is that Mr. de Castro had an election to select an attorney or not and likewise to dispense with the services of said attorney when he so elected.

The fourth question of law presented by the appellant is that the district court erred in sustaining that quo warranto is not the proper remedy when an employee has been removed and another put in his place. This might be ignored inasmuch as the district court did not have to decide that point. Appellant alleged to the district court that certiorari was not the proper remedy in this case and that the petitioner should have proceeded in quo warranto. That was appellant's contention but the only thing that the district court was called upon to decide was whether or not certiorari was the correct procedure.

The fifth legal question presented by appellant might also be ignored. It takes us back to the petition, in which the petitioner makes some personal and perhaps slurring remarks about Mr. de Castro. Appellant alleges that these remarks should not have been overlooked by the district

court inasmuch as they tended to prove the very lack of cordiality with which the appellee had been charged. However, appellant overlooks the fact that the district court was not hearing the charges themselves, but was merely reviewing the action taken as a result of said hearing.

As his sixth question of law the appellant alleges error in the district court in finding that in relations between lawyer and client a preponderance of evidence is necessary to prove negligence.

It seems to us that appellant's contention that a client has the right to terminate his relations with his lawyer at any time, with or without any specific reason, is so sound as to admit of no argument.

Appellant's seventh question of law has to do with the application of the doctrine in *Gil* v. *Chardón,* 41 P.R.R. 208, which deals with the situation of a civil service employee and his superior. In view of the fact that in this case the controversy is one between attorney and client, we are of the opinion that appellant's contention is sound and the doctrine is not applicable to this case.

Appellant's eighth legal question has to do with defects in the judgment of the district court.

In his motion to dismiss the appeal appellee gives four reasons, as follows:

1. The appeal has become academic by the abolition of the positon of attorney by the Board of Commissioners.

2. Because the notice of appeal was not served on Mr. Valldejuli and the oath taken by Mario Mirabal, Jr., is invalid since he is an employee of Mr. Besosa, who is personally interested in the position.

3. Because there is no appeal from the decision of the district court as Act No. 99 of 1931 is a special law and does not give a right to appeal.

4. Because it does not appear from the face of the notice of appeal that it has been filed in the secretary's office of the court who handed down the judgment.

■ In our opinion the appeal is not purely academic since the district court awarded costs to the petitioner and also, as alleged by appellant, there is the question of the payment of the salary to the attorney during the months of April, May and June. There would also seem to be a question of public policy of the City involved, as during said months of April, May and June, Mr. Valldejuli and Mr. Besosa each allege that they have been acting as attorney for the City Manager. It is to the benefit of the City that the question as to who had the actual representation and who was acting without authority be decided.

■ As his second reason for dismissal appellee alleges that he was not notified of the appeal, inasmuch as according to the oath of Mario Mirabal a copy of the notice was left at Valldejuli's office with his secretary. Mr. Valldejuli claims this service is irregular as he had no secretary on that date. However, as under Section 320 of the Code of Civil Procedure, all that is strictly necessary is to leave a copy at the office of the attorney if absent, the fact as to whether or not the person to whom it was delivered was a secretary or not, does not seem to be of great importance. At the same time Mr. Valldejuli does not deny that the notice was left at his office, and according to Rule 75 of this Court the affidavit of the person making delivery of any document shall constitute proof of the delivery of same.

Appellee's contention that the service of the notice was void because Mario Mirabal was the employee of the lawyer for appellant is groundless.

■ The question as to whether or not an appeal may be taken from the judgment has been decided in *Coll* v. *Todd,* supra, where the following is stated:

"Sections 50 and 292 of the Code of Civil Procedure give a right of appeal from a judgment rendered by a district court in certiorari proceedings brought under section 65 of the Municipal Law."

■ As his fourth ground for dismissal appellee alleges that the notice of appeal does not show from its face that it

has been notified to the secretary and filed in the secretary's office. The Secretary of the District Court, however, certifies that all the documents copied therein have been filed in his office. As the notice is part of the record certified by the Secretary of the District Court, it does not seem to us that an alleged error in the record is reason for dismissing an appeal.

For the reasons above stated, the judgment appealed from rendered by the lower court in this case is reversed and the writ of certiorari issued by said court is annulled.

Mr. Justice Córdova Dávila took no part in the decision of this case.